KAVANAUGH, Circuit Judge,
dissenting:
I agree completely with the majority opinion about bedrock principles of statutory interpretation. The plain meaning of the text controls; courts should not strain to find ambiguity in clarity; courts must ensure that agencies comply with the plain statutory text and not bypass Chevron *681 step 1. And I strongly align myself with the majority’s quotation from Justice Frankfurter about the best tool of statutory interpretation: “(1) Read the statute; (2) read the statute; (3) read the statute!” Maj. Op. at 678.
In this case, however, I respectfully part ways with the majority opinion because the relevant statutory language supports EPA’s 2006 rule.
Under the Clean Air Act, state and local authorities issue permits for certain sources that emit air pollution. The permits must list the pre-existing emission limits and the pre-existing “monitoring ... requirements to assure compliance” with the emission limits. 42 U.S.C. § 7661c(c); see also § 7661c(a). Importantly, by regulation, those emission limits and monitoring requirements are not created by state and local permitting authorities at the time they issue the permits. Rather, the permit is simply a device that lists in one “source-specific bible for Clean Air Act compliance” pre-existing emission limits and monitoring requirements, including those set forth by pre-existing EPA-approved state implementation plans (SIP), EPA-dictated New Source Performance Standards (NSPS), EPA-generated National Emission Standards for Hazardous Air Pollutants (NESHAP), and other applicable requirements. Virginia v. Browner, 80 F.3d 869, 873 (4th Cir.1996); see also Appalachian Power Co. v. EPA, 208 F.3d 1015, 1026-27 (D.C.Cir.2000).
The dispute in this case boils down to the following: When issuing permits, can state and local permitting authorities independently determine whether, in their view, those pre-existing monitoring requirements are sufficient “to assure compliance” with emission limits — and if they think not, impose additional monitoring requirements? The legal question here is: Who Decides? According to petitioners, the statute says that state and local permitting authorities can decide on their own to impose additional monitoring requirements as they see fit. EPA responds that it possesses the statutory authority and discretion to decide whether state and local permitting authorities can impose additional monitoring requirements.
The statutory text resolves that question; the statute grants EPA the authority to determine whether state and local permitting authorities can impose additional monitoring requirements. The text says that the monitoring requirements listed in the permit “shall conform to any applicable regulation under subsection (b) of this section.” § 7661c(c). In turn, subsection (b) says EPA “may by rule prescribe procedures and methods for determining compliance and for monitoring and analysis of pollutants regulated under this chapter....” § 7661c(b) (emphasis added).
Exercising its authority under this rather straightforward statutory scheme, EPA has decided that pre-existing periodic monitoring requirements (for example, in the SIP, NSPS, and NESHAP) are to “assure compliance” with emission limits and that state and local permitting authorities may not add new periodic monitoring requirements when issuing permits. EPA has allowed one exception: If there are no periodic monitoring requirements set forth in the pre-existing applicable requirements, state and local permitting authorities not only can but must add periodic monitoring requirements to permits. 40 C.F.R. § 70.6(a)(3)(i)(B).
To be sure, EPA and the state and local permitting authorities (and outside interest groups) might disagree about whether the pre-existing monitoring requirements listed in the permit will “assure compliance” with the relevant emission limits. But pursuant to its statutory authority, EPA has determined that the permitting pro *682 cess is not the time and place for state and local permitting authorities to add new periodic monitoring requirements. Rather, if changes are to be made to the underlying monitoring requirements, they should occur during the process for formulating and revising SIP, NSPS, NESHAP, and other applicable requirements.
I therefore would reject petitioners’ primary statutory argument.*
For its part, the majority opinion says it need not resolve the broad question raised by petitioners whether EPA must allow state and local permitting authorities to add new periodic monitoring requirements when issuing permits. Maj. Op. at 678-79. The majority instead resolves this case on more limited grounds, based on a factual wrinkle in this case. According to EPA, there is a narrow group of pre-existing applicable monitoring requirements (primarily from before 1990) that may not assure compliance with emission limits. EPA has determined that any such shortcomings should be resolved by rule or through revisions to the underlying SIPs, for example, not by state and local permitting authorities during the permitting process. EPA’s approach to this problem is consistent with the overall statutory and regulatory scheme, which indicates that the permitting process is generally not the vehicle for making substantive monitoring decisions; again, the permit simply lists the pre-existing monitoring requirements and emission limits in one place. I thus find nothing in the statute that prohibits EPA’s approach to fixing any inadequate pre-existing monitoring requirements.
The majority’s contrary decision is narrow and appears to allow state and local permitting authorities to add periodic monitoring requirements only in those cases where EPA itself concludes that the preexisting applicable monitoring requirements are not adequate and EPA has taken no action. That is likely to be a small percentage of overall permit decisions. But because I conclude that the challenged EPA rule is entirely consistent with the statutory text and is otherwise reasonable, and because petitioners’ other challenges are not persuasive, I would deny the petition in whole. I respectfully dissent.

 Taking a different position from petitioners or EPA, the industry intervenors argue that the statutory text actually prohibits EPA from allowing state and local permitting authorities to impose additional monitoring requirements when issuing permits. I disagree with industry intervenors for the same reason that I disagree with petitioners. The statute gives EPA the discretion to decide this question; the statutory text does not mandate a particular answer.